its agent.  Not only this, but the defendant recognized Philips' act in issuing some of the binders signed by him on the 4th as binding upon it, by thereafter receiving premiums, and issuing policies to take their place.  In some of these policies the insurance was stated to commence prior to January 4th, and the premiums were deposited by Philips in a bank to his credit as agent of the defendant.  These facts, taken in connection with the act of the defendant with reference to the appraisal of the damages, and the participation of White as its representative therein without objection, were clearly sufficient to justify a finding that Philips had authority to bind the defendant by the issuance of the binder in question.  His issuance to I. Tanenbaum, Son & Co., of the different binders on the 4th of January, and his rejection of the other applications, was one act; and the recognition by the defendant that Philips had authority in any of the cases was in itself sufficient to justify the conclusion that he had authority in the others.  And that the defendant did recognize he had such authority is evidenced by the fact that it accepted the premiums, and thereafter issued policies to take the place of some of the binders.

We are also of the opinion that there was sufficient evidence to justify the jury in finding that White was authorized to act as adjuster of the defendant, and that he had authority to make the agreement as to the appraisal which he did on its behalf.  The general agent of the defendant knew that White was engaged by Philips, and was acting as its adjuster, and that, in case of a disagreement as to the amount of loss sustained by the plaintiff, an appraisal would be had.  He acquiesced in what White was doing, and did not repudiate his acts until after the defendant's proportionate share of the loss had been fixed and determined.  After the defendant had thus permitted White to act with others interested in fixing the loss, good faith, honesty, and fair dealing require that it should not thereafter be heard to say that White had no authority to do what he did.

The other exceptions raised by the defendant have been considered, but are equally without merit.

It follows that the judgment appealed from must be affirmed, with costs to the respondent.  All concur.

---

(37 App. Div. 434.)

DELAHUNTY v. CENTRAL NAT. BANK OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.  February 10, 1899.)

BANKS—DEPOSITS—DEMAND AND REFUSAL—WAIVER.

On his appointment, a receiver of a depositor wrote the bank, asking that the amount of the deposit be sent to him.  For answer, the bank's attorneys wrote that the bank was itself a creditor of the depositor in an amount exceeding the deposit.  *Held*, that there was sufficient demand and refusal to entitle the receiver to sue for the deposit.

Rumsey, J., dissenting.

Appeal from trial term, New York county.

Action by John Delahunty, as receiver, etc., against the Central National Bank of the City of New York. From a judgment dismissing the complaint after a trial, plaintiff appeals. Reversed.

The plaintiff, as receiver, sued to recover a balance of account in favor of the firm of William Campbell & Co., who were depositors with the defendant. The answer, besides setting up an affirmative defense, admits that a certain balance in favor of the said firm existed at the date alleged, but denies the demand and refusal to pay. On the trial the only question passed upon was whether a sufficient demand had been made before the commencement of the action. Upon that question the plaintiff offered the following letter, the receipt of which was admitted by the defendant:

"New York, May 12th, 1897.

"Central National Bank of New York—Gentlemen: I have been appointed receiver of the late firm of William Campbell & Company, which has on deposit with you the sum of $1,138.08. Will you please send me that amount, and let me know what papers you require for vouchers, showing my appointment, and I will prepare and send them to you.

"Yours, truly,      John Delahunty, Rec'r."

The answer to this letter by the defendant's counsel is as follows:

"New York, May 13th, 1897.

"John Delahunty, Esq.—Dear Sir: The Central National Bank of New York has referred to us your letter of yesterday, requesting us to attend to it. You are probably not aware that the bank is itself a creditor of Campbell & Co., to an amount far exceeding these moneys mentioned in your letter to it.

"Yours, truly,      Duer, Strong & Jarvis."

After the admission of these letters, and an attempt to introduce some other evidence on the subject of demand,—which, because immaterial, was excluded, and need not be considered,—the plaintiff rested. Thereupon the defendant moved for a nonsuit, on the ground that no sufficient evidence of demand and refusal had been given, which motion was granted, and the plaintiff excepted; and it is from the judgment thereafter entered that this appeal is taken.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

J. Woolsey Shepard, for appellant.
George A. Strong, for respondent.

O'BRIEN, J. It must be regarded as settled that as to moneys deposited in bank, before the same can be recovered in a suit, it is a condition precedent that a demand should be made therefor. This flows from the relation between a depositor and the bank, and from the promise which the law implies, that the deposit will be returned after demand. The contract, therefore, is that the bank is entitled to retain the deposit until some suitable request is made for its return. The authorities are far from uniform as to the precise nature of the demand, some using the expression that a demand in some form is necessary, leaving its sufficiency to be determined by the facts appearing in each case. Where, however, the bank has, by refusal, or by an appropriation of the money, or by any other act, shown an indisposition to honor a demand, the cases hold that under such circumstances a demand is unnecessary. So, too, "if, when a demand is made, a specific objection is made as a reason for not complying with the demand, all other objections which, if made, might be readily obviated, are waived. And where the demand is

not made of the proper person or in the proper manner, or is made by the wrong person, objection should be taken at the time." 5 Am. & Eng. Enc. Law (1st Ed.) p. 528g. The question therefore turns upon whether the letter of the receiver was a proper demand, and, if not, whether the answer thereto can be construed as of a nature to justify the failure to make further demand. There can be no doubt that the receiver wanted, and requested of the bank, a return of the deposit; and, while the requirement that it should be sent to the receiver's office was one that the bank was not obliged to comply with, it was an objection which should have been taken at the time. The receiver made his request in the form outlined in his letter; and if it was the intent or purpose of the bank, before honoring the demand or paying the money, to insist that the receiver should draw his check in the usual way against the account, and, either personally or through some other medium, present it with evidence of his authority, it seems but reasonable that it should then have taken that objection, and so notified the receiver. It did not, however, take the objection that the receiver had no right to ask the bank to send the money to him; but, instead of meeting the request as made, the bank turned the receiver's letter over to its attorneys. We are thus brought to a consideration whether or not such action on the part of the bank, coupled with the subsequent letter of the attorneys, was a refusal. That the bank did not intend to comply is reasonably to be inferred, because the letter received was turned over to its attorneys, who subsequently, on its behalf, answered it, and in such answer, instead of making any point about the manner of the demand, or the place where the money was to be paid, or to the failure to show authority or warrant to receive it, the attorneys stated that the receiver was "probably not aware that the bank is itself a creditor of Campbell & Co., to an amount far exceeding these moneys mentioned in your letter to it." There is certainly nothing in this letter from which the inference can be drawn that the bank intended to comply with the request, or that, if the receiver went to the bank, it would pay the money. On the contrary, we think the receiver had a right to conclude that the position taken by the bank was that it was entitled to appropriate the deposit in payment of an indebtedness due it from Campbell & Co., and that this attitude rendered useless or obviated the necessity of any further or more formal demand. The receiver, therefore, having waited about six months without hearing further from the bank, and being thus strengthened in the first impression produced by the receipt of the attorneys' letter, commenced this action. The reply of the attorneys fully justifies the inference that, under claim of right, the bank intended to retain the moneys and apply them to its own indebtedness. If such was not the intention, the language was so evasive, and so well calculated to produce that impression, that fault cannot be found with the receiver, if he was thus misled. While, therefore, it may not be that the receiver's letter, taken by itself, was a sufficient demand, yet, when coupled with the bank's action, and the language of the attorneys' letter, in which the bank's position was defined, we think it was error for the trial justice to hold that any

further or more formal demand was necessary before suit. The right suggested in the letter of the attorneys, and alleged in the answer, to appropriate these moneys to the bank's indebtedness, might or might not have been sustained upon the trial; but that question is not presented upon this appeal, the nonsuit being placed on the ground of the failure of the plaintiff to show a demand in any form, or a sufficient refusal on the part of the bank.

We think the ruling made was incorrect, and that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except RUMSEY, J., dissenting.

BARRETT, J. (concurring). I agree to the reversal of this judgment. No particular form of demand was necessary. As Judge Bronson said in Downes v. Bank, 6 Hill, 299, "the understanding between the parties is that the money shall remain with the banker until the customer, by his check, or in some other way, calls for its repayment." Here the receiver called for repayment. It was a demand, though not such a demand as the bank was bound to honor. The receiver said, "Will you please send me that amount?"—specifying it. That was certainly a request for the money. The bank need not have replied, or it might have replied, "We will not send you that amount, as you are bound to call for it." But it made no such reply. It spoke through its lawyers. The reply of these gentlemen was therefore the reply of the bank. It was quite as though the bank had written directly to the receiver, and had said what they said. The bank, then, being asked to please remit the amount due, replies, "You are probably not aware that the bank is itself a creditor of Campbell & Co., to an amount far exceeding these moneys mentioned in your letter." This is its sole reply to the request for the money. What is that but a refusal to honor the plaintiff's request, not because the bank objected to its form or substance, but because it deemed itself entitled to keep the money? The receiver was justified in thus regarding the letter in question, and in treating it as the bank's counter statement to his request,—a counter statement implying nonrecognition of his rights, an assertion of the bank's rights, and a refusal to pay him.

RUMSEY, J. (dissenting). For some years before the 24th of February, 1897, the firm of William Campbell & Co. was engaged in business, and was a depositor in the Central National Bank. On the 13th of December, 1895, there stood to the credit of the firm on the books of the bank $1,138.08, being the balance due it as depositor in the bank. The plaintiff was appointed receiver of that firm on the 24th of February, 1897. On the 12th of May, 1897, he wrote and sent to the defendant a letter, of which the following is a copy:

"New York, May 12th, 1897.

"Central National Bank of New York—Gentlemen: I have been appointed receiver of the late firm of William Campbell & Company, which has on deposit with you the sum of $1,138.08. Will you please send me that amount, and let me know what papers you require for vouchers, showing my appointment, and I will prepare and send them to you.

"Yours, truly,                    John Delahunty, Rec'r."

No other demand was ever made for the amount of the deposit than the writing and sending of this letter by mail to the bank. The only notice taken of the letter was a reply sent the next day by the counsel of the bank, of which the following is a copy:

"New York, May 13th, 1897.

"John Delahunty, Esq.—Dear Sir: The Central National Bank has referred to us your letter of yesterday, requesting us to attend to it. You are probably not aware that the bank is itself a creditor of Campbell & Co., to an amount far exceeding these moneys mentioned in your letter to it.

"Yours, truly,             Duer, Strong & Jarvis."

After the receipt of that letter by the receiver, there seem to have been no further communications between the parties, but this action was brought against the bank for the recovery of the amount of the deposit. On the trial, upon proof of the foregoing facts, the court held that no sufficient demand had been made upon the bank, and that it had not waived a demand or refused to pay, and, therefore, that the plaintiff had not proved a cause of action, and directed a nonsuit. From the judgment entered upon that direction this appeal is taken.

While, in a general way, it may be said that a bank is the debtor of its depositor for the money deposited with it, yet there arises from the fact of the deposit no immediate duty to pay back the money without a demand; and, until a demand has been made, the bank is not in default for any refusal to pay, and no action can be maintained against it. Downes v. Bank, 6 Hill, 297. So firmly is this rule settled, that it is now established that the statute of limitations does not run in favor of the bank and against the depositor to recover the amount of the deposit until a demand has been made. Howell v. Adams, 68 N. Y. 314; Bank of British North America v. Merchants' Nat. Bank, 91 N. Y. 106. When one is dealing with a bank, the known customs of the business of banking, and the ordinary methods of transacting that business, enter into the contract; and the parties must be understood as having governed themselves by such customs and methods, and this whether there was any proof made that they had actual knowledge of them or not. Fowler v. Brantley, 14 Pet. 318, 320. The general customs of the banking business are well known, and judicial notice must be taken of them. Bank v. Hall, 83 N. Y. 338; Mortgage Co. v. Tibballs, 63 Iowa, 468, 19 N. W. 319. One of these customs, which is thoroughly settled, is that a demand for money deposited in the bank is to be made at the banking office, and during banking hours, and the bank is not called upon to pay any attention to a demand made elsewhere or at any other time. It is not necessary to say that the demand must be accompanied with a check or any voucher; but that it must be made at that place, and during those hours, cannot be disputed. It is easy to understand that it would be impossible for a bank to do business in any other way. If depositors were to be permitted to send to the bank, by mail or messenger, a notification that they desired the bank to pay certain money to them at a certain time at their own places of business, so that the bank, in paying the money, would be required to send its messenger from house to house as a milkman

serves his customers, it is quite clear that it would be impossible to transact banking business. This demand was not made in such a way as the customs of the banking business required. It was sent by mail, and it called upon the bank to transmit to the receiver, at his office, the amount of the deposit, and to receive its vouchers thereafter, when the receiver was satisfied what papers were necessary to be delivered by him.

If the bank had paid no attention to this letter, no one would claim for an instant that it operated as a demand to put it in default, and to permit an action against it for the recovery of this money. But it is said by the plaintiff that the answer of the bank showed that a demand would have been futile, and, therefore, that there was no necessity of making one. In the case of Southwick v. Bank, 84 N. Y. 420, it is said that, "wherever a demand is necessary, it is not excused by showing that the defendant would not probably have complied, if one had been made." But, without insisting upon the rule of law there laid down, and conceding that, if it had been made to appear that the bank would not have complied with a proper demand under any circumstances, the plaintiff would have been excused from making one, it remains to be considered whether the letter which was in fact written was to be construed as a refusal to pay the money, such as to relieve the plaintiff from the necessity of making the demand. The relative situations of the parties, as they appear from the evidence, are that the firm of Campbell & Co. were depositors with the bank; that the deposit had been standing unclaimed from December, 1895, until May, 1897; and that the receiver was appointed very shortly before his letter was written. Whether he had any information as to the business relations between the bank and the firm does not appear. It is fairly to be assumed from the letter—and there is no other proof in the case upon the subject—that the bank was a creditor of Campbell & Co. to a considerable amount. If Campbell & Co. were solvent,—and there is no proof that they were not,—the bank owed them nothing, because it had the right to set off the amount of the deposit against the debt. Bank v. Hughes, 17 Wend. 94; Sweeny v. Easter, 1 Wall. 166. If, for any reason, that right did not exist, it is quite clear that the defendant was entitled to be informed as to the facts which took away the right, before it could be called upon to pay over the full amount of the deposit to the receiver. No inference can be drawn from the letter of the defendant that if it had been made to appear that the firm of Campbell & Co. was not solvent, so that the defendant, instead of being entitled to set off its claim, was entitled to none of it, or only to such a percentage of it as the assets of Campbell & Co. would warrant, it would not have paid the full amount of the deposit. Before it would be called upon to do so, it was entitled to have the information given to it as to the condition of this firm, so that it might know its rights, and whether or not that deposit was in fact due. It is a fair interpretation of the letter of the defendant to say that, so far from being an absolute refusal to pay the amount of the deposit, it was an invitation to the receiver to give to the writers of the letter the information which

would enable them to know whether or not that deposit was due. Such an answer neither tended to show that a demand would be futile, nor can it fairly be construed as a refusal; and, unless it operates as one or the other, it clearly did not make that demand good which before that time was good for nothing. But it is claimed by the plaintiff that the defendant is not in a situation to insist that the demand was not sufficient, because it alleged in its answer that the amount of the deposit had been applied upon the debt due from Campbell & Co. to the bank. There is no proof of that fact. If the defendant admits that fact,—and, unless it admits it, no advantage can be taken of it here,—then the bank, having a counterclaim to a very much larger amount than the amount of the deposit, had the right to apply the deposit upon it, and was not indebted to Campbell & Co. when the receiver was appointed, and is not indebted to the receiver now. But I apprehend that the fact that the defendant sets up as an affirmative defense something which, if proven, would do away with the necessity of proving a certain fact to establish a cause of action, does not permit the plaintiff to recover without proving his cause of action,—at least, until proof has been given to establish the defense. The rule is thoroughly settled that the defendant may put his defense upon distinct, and even upon inconsistent, grounds (Goodwin v. Wertheimer, 99 N. Y. 149, 1 N. E. 404); and, if the defendant pleads a general denial, the plaintiff is clearly bound to prove his cause of action, although the defendant may also set up a confession and avoidance by way of affirmative defense. When the plaintiff closes his case, the question for the court is whether, taking the facts proved and the admissions of the pleadings, the plaintiff has shown himself entitled to recover. If he has not, then it is the duty of the court to nonsuit, or to dismiss his complaint, without taking proof of the affirmative defenses set up in the answer. I am quite clear that when the proof closed upon this trial the plaintiff had shown neither a sufficient demand nor a refusal, and, therefore, that the ruling of the court was correct.

The judgment should be affirmed, with costs.