# UNITED STATES v. GUARANTY TRUST CO. OF NEW YORK.

## No. 1.

Circuit Court of Appeals, Second Circuit.
Dec. 12, 1938.

Lamar Hardy, U. S. Atty., of New York City (David E. Hudson, Sp. Asst. to Atty. Gen., and Leon E. Spencer, Asst. U. S. Atty., of New York City, and Aaron B. Holman, of Washington, D. C., of counsel), for the United States.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (John W. Davis, Ralph M. Carson, and J. Paschall Davis, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

By this action the United States as assignee of the Union of Soviet Socialist Republics sought to recover $4,976,722.78, with accrued interest from December 12, 1917, being the alleged balance of a deposit account opened with the defendant by the Imperial Russian Government on July 15, 1916. Pursuant to the Conformity Act, 28 U.S.C.A. § 724, the Civil Practice Act of New York, § 307, and Rules 107 and 120 of the Rules of Civil Practice of New York, the defendant before answer moved for dismissal of the complaint on the ground that the assigned cause of action was barred by the six year statute of limitations of New York, Civil Practice Act of New York, § 48, prior to its assignment on November 16, 1933. Upon depositions, affidavits and exhibits submitted in support of the motion and counter affidavits and exhibits in opposition thereto, the district court found that the defendant had unequivocally repudiated liability on the account on February 25, 1918, and had given notice of repudiation prior to June 30, 1922 to both the Russian Ambassador and the Financial Attache of the Russian Embassy, and that the cause of action was barred. Judgment was entered dismissing the complaint. On appeal this court held that the New York statute of limitations did not run against a foreign sovereign. United States v. Guaranty Trust Co., 2 Cir., 91 F. 2d 898. This decision was reversed by the Supreme Court and the cause was remanded for further proceedings in conformity with its opinion. Guaranty Trust Co. v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224. The final paragraph of that opinion makes clear that this court is to determine whether the district court's finding of unequivocal repudiation of liability by the defendant is supported by the record and whether there is such conflict in the evidence as to require a full trial rather than summary disposition on motion. Lengthy argument has been heard upon these issues.

The Imperial Russian Government, which opened with the Guaranty Trust Company the bank account in suit, was overthrown in March, 1917 and was succeeded by the Provisional Government of Russia; in turn the latter was succeeded by the Soviet Government in November, 1917. At that time there was on deposit in the account approximately $5,000,000. The Soviet Government was not accorded diplomatic recognition by the United States until November 16, 1933. In the meantime the Russian State was represented in the United States by Mr. Boris Bakhmeteff and Mr. Serge Ughet, accredited representatives of the Provisional Government. The Department of State recognized Mr. Bakhmeteff as Russian Ambassador from July 5, 1917 until his retirement on June 30, 1922, and thereafter recognized Mr. Ughet as custodian of Russian property in the United States. Prior to the Ambassador's retirement, Mr. Ughet's official position was that of Financial Attache of the Russian Embassy. During the Ambassador's absence while attending the Peace Conference in Paris, from December 3, 1918 to July 31, 1919, Mr. Ughet was recognized as Charge d'Affaires ad interim.

When the Provisional Government was overthrown by the Soviet Regime questions at once arose concerning the control of bank accounts in the United States belonging to the Russian State. Both the Russian Ambassador and the State Department desired that such funds be made available for payment of Russian obligations under contracts for war supplies or of interest to fall due on Russian Government bonds held in this country. An arrangement of this kind was made with the National City Bank by the Ambassador as evidenced by his letter of November 28, 1917. Shortly thereafter, Mr. Ughet suggested to Mr. Sabin, president of the Guaranty Trust Company, the making of a similar arrangement with it. By letter dated December 12, 1917, the suggestion was declined by Mr. Sabin on the ground that payments out of the account were authorized only upon the signatures of two of certain designated officials of the Ministry of Finance and that "under present conditions" neither such former officials nor the Ambassador had authority to draw against it. Whether this constituted such a refusal by the defendant of a demand for payment as to start running the statute of limitations, the district judge did not decide; nor need we. Repudiation of liability was found to exist because of the subsequent conduct of the defendant. Guaranty Trust Company had deposit accounts with various commercial banks in Russia; on February 23, 1918, it was informed by cable that the Russian commercial banks had been nationalized and their assets absorbed by the State Bank, and that payment of their obligations could no longer be expected. Two days later, upon ad-

vice of counsel, the Russian accounts of Guaranty Trust Company were consolidated into a single account entitled "Russian Government account." On the debit side were entered the balances owed to Guaranty Trust Company by the various Russian banks, and on the credit side were entered the balances on the Guaranty's books standing to the credit of the account in suit and of accounts of Russian commercial banks; the total debits were in excess of $9,000,000 and the total credits approximately $7,226,-000. As part of this transaction ledger entries were made in the account in suit, charging off the balance of approximately $5,000,000 and closing the account. These actions of the Guaranty Trust Company's officers were formally ratified and approved by the executive committee of the board of directors on March 14, 1918.

The duty owed by a bank to its depositor is to pay upon demand. Ordinarily, therefore, demand by the depositor and refusal by the bank are essential to create a cause of action in favor of the depositor. But where a bank has unequivocally repudiated liability, no demand is necessary to entitle the depositor to sue for money on deposit. Tillman v. Guaranty Trust Co., 253 N.Y. 295, 297, 171 N.E. 61; Sokoloff v. National City Bank, 250 N.Y. 69, 80, 164 N.E. 745; Delahunty v. Central Nat. Bank, 37 App.Div. 434, 436, 56 N.Y.S. 39; Morse, Banks & Banking, 6th ed. sec. 322, Waiver of Demand. The Guaranty Trust Company's closing of the account in suit and appropriation of the balance therein as a setoff to a claim asserted by it against the Russian Government (whether with or without legal justification) was clearly an act of unequivocal repudiation of liability on the account. However, to be effective to start the running of the statute of limitations, knowledge of the repudiation of liability must be brought home to the depositor. That notice to the duly recognized diplomatic representatives of the State of Russia must be taken as notice to it and that they were authorized to sue on its behalf has already been adjudicated. Guaranty Trust Co. v. United States, 304 U.S. 126, 139, 58 S.Ct. 785, 82 L.Ed. 1224.

Although no formal notification of the consolidation of the Russian accounts was given by the Guaranty Trust Company to Ambassador Bakhmeteff or to Financial Attache Ughet, the evidence is clear that both these gentlemen had such notice prior to June 30, 1922. In response to the question whether he knew that the Guaranty Trust Company had made this offset on its books, the Ambassador testified upon his deposition: "I would say what I knew was this: That the reason, or all of the reason, why they refused to give this money was the fact that they made that offset." He could not remember from whom or when he obtained this information but said that he had many conferences with Mr. Polk of the State Department and "I would not be surprised if this question was discussed many times, but I distinctly remember one conference." That Mr. Polk knew of the setoff is proved by Mr. Leffingwell's letter of May 9, 1918, and Mr. Polk's reply of June 5, 1918. On April 9, 1918, the Ambassador had written Mr. Polk regarding the Guaranty Trust Company account, expressing the hope that "you will find it possible to have the funds released and thus have assured the proper payment of interest to the holders of Russian securities in this country." It is a most natural inference that Mr. Polk would report to the Ambassador information concerning the setoff. But whether the Ambassador's knowledge of it was obtained from Mr. Polk or from Mr. Ughet, is not important; the fact that the Ambassador knew of the setoff rather than the source of his information is the vital matter. There is no contradiction of his testimony that he did know of it. Moreover, written corroboration of his testimony that he knew of the Guaranty Trust Company's position can be gathered from a letter written him by Mr. Murray, the counsel of the Russian Embassy. On September 12, 1921, Mr. Bakhmeteff had written Mr. Murray, asking him to confer with Mr. Wardwell, counsel for the Trust Company, in order to find out whether the Trust Company would be willing to release the account for the purpose of famine relief in Russia. Mr. Murray's letter of September 23, 1921 tells of the failure of his efforts and states that Mr. Polk and Mr. Wardwell "found on an examination of the records that their office was of the opinion that the Trust Company should not part with the fund, especially as it appeared that it stands to lose more than the amount of the fund."

Mr. Ughet also knew of the setoff. He testified to being present at a conference between Mr. Polk and Mr. Sabin at which the latter "pointed out that because the Guaranty Trust Company was having certain claims against Russia in consequence of November events of 1917, the Guaranty

Trust Company, therefore, was not feeling at liberty to release this fund to the jurisdiction of the Russian Embassy." In fixing the date of that conference as either in December, 1917 or January, 1918, it would seem that Mr. Ughet was in error, for Guaranty Trust Company did not assert any claims against Russia until it learned in February, 1918 of the nationalization of the Russian commercial banks. This is confirmed not only by the date of the opening of the consolidated "Russian Government account" but also by Mr. Sabin's letter to Mr. Polk dated January 31, 1918, which makes no mention of any claims against Russia. Further proof that Mr. Ughet knew of the setoff is found in his letter of July 1, 1919 to Mr. Murray in which he writes "that while the funds of the Guaranty Trust Company have been seized by the Bolsheviki bands, who, quite naturally are not recognized by the United States, the Guaranty Trust Company is not releasing the funds of the Russian National Government." The affidavit of Mr. Stanley also offers convincing evidence of Mr. Ughet's acquaintance with the fact of the setoff. In his affidavit, Mr. Stanley stated that on behalf of the Guaranty Trust Company he attended a conference of representatives of a group of banks interested in the Russian loan, interest on which was shortly to fall due; that Mr. Ughet was present at this conference and asked Mr. Stanley whether the Guaranty Trust Company would make the account available, to which Mr. Stanley replied that "this money was not available unless the Russian Government paid Guaranty Trust Company what it owed to them." This affidavit is corroborated by that of Mr. Sargent, except that Mr. Sargent is uncertain whether it was Mr. Ughet or Mr. Fulton, vice-president of the National City Bank, who requested that the account in the Guaranty Trust Company be released to pay interest. It is urged by the appellant that these affidavits are contradicted by Mr. Ughet's deposition, in which he testified that he did not know Mr. Stanley, and did not "believe" anything was said at that conference about payment out of the account. But he also testified that, although present at the conference, he had no definite recollection of what occurred there. In the light of this admission, Mr. Ughet's failure to recall Mr. Stanley after a lapse of nearly twenty years, and his belief that nothing was said about payment, can hardly be deemed a contradiction of the occurrences remembered by Mr. Stanley and Mr. Sargent. In any event, their affidavits were not vital to the defendant's proof in view of the other evidence already mentioned.

The appellant does not controvert the facts above recited but contends that taking into consideration the evidence contained in the entire record, the district court "erroneously relied upon the isolated facts of the consolidation of the Russian accounts, and refusal by the bank to release the account to certain individuals, as establishing unequivocal repudiation of liability." The argument is that letters of the Guaranty Trust Company written subsequent to consolidation of the accounts are inconsistent with an unequivocal appropriation to its own benefit of the account in suit and indicate at most an attempt to treat that account as security for its asserted claims against the Russian Government and an intention to postpone payment of the account until the restoration or establishment of a stable government in Russia. Mr. Sabin's letter to Mr. Polk dated June 9, 1919 is relied upon, and particularly the following paragraphs:

"We hold the deposit for account of 'The Russian Government', and shall be under the duty to account for this deposit to a regular and responsible Russian Government whenever such a government is established and calls upon us to pay it or to apply it according to its direction. In the meantime we can only hold it. We consider that we have no more right or authority to use it now to pay interest on the bonds of a certain Russian loan than we should have to apply part or all of the deposit of any individual with us to the payment of such individual's debts upon our own initiative. Our action in using part of this deposit for such purpose might be disapproved by a future Russian Government.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

"For these reasons we do not see our way clear to make use of any part of the Russian Government deposit for the purpose mentioned."

After referring to the nationalization of Russian commercial banks, the letter continues: " \* \* \* Under the circumstances, we considered it necessary and proper to consolidate the Russian Government account and the accounts of the Russian commercial banks, the results being, according to our computation, a credit bal-

ance in our favor. This situation, as you will readily understand, gives rise to certain questions which can be satisfactorily settled only upon the restoration or establishment of a responsible government in Russia, when undoubtedly all of them, in so far as they concern American financial interests, will, with the aid of our Government, be properly disposed of. In the meantime, however, as we regard it, both in considering the Russian Government account by itself, and in considering the consolidated account referred to, any payment made by us now would leave us in a position where we might be required to pay the same amount again."

There is also Mr. Sabin's letter of July 10, 1919 to Mr. Fulton, which says that "no one now has authority to draw Russian Funds on deposit in this bank." This letter, however, enclosed a copy of the June 9th letter which referred to the setoff. Again, there is the letter of December 9, 1921 addressed to Honorable Charles E. Hughes, Secretary of State, which states that "The Russian Ambassador in this country never had authority to draw on this account and never attempted to exercise any control." But this is followed by a paragraph explaining the setoff and stating that "when there is a government in Russia recognized by the United States we shall press our claim for the balance due us, together with interest thereon."

In none of these letters, nor in any other part of the record, do we find evidence that the Guaranty Trust Company ever abandoned its claim to the setoff which had been made on its books in February 1918. Thereafter, as before, it continued to deny the authority of the Ambassador to draw on the account, but this was always supplemented by the additional ground that the balance in the account had been appropriated as a partial setoff against the Guaranty Trust Company's claims against Russia. The reiteration of additional reasons for declining to make the deposit available without any retraction of the setoff ground, does not, as argued, make the repudiation

of liability tentative. Nor do statements that the Guaranty Trust Company will be under a duty to account for the deposit to a responsible Russian Government when one is established render the repudiation equivocal. The consolidation of Russian accounts resulted in a balance in favor of the Trust Company; it realized that if in the future it should seek to collect that balance, the amount claimed would have to be justified. If the amount credited to Russia in the consolidated account should be reduced by unauthorized payments of interest on Russian bonds, the propriety of such payment could be questioned and the balance recoverable from Russia correspondingly reduced. In this sense, the defendant was under a "duty to account" and did "hold the deposit" which it had appropriated as a setoff, "for account of the Russian Government." Hence the language used by Mr. Sabin in the above-quoted paragraphs of his letter of June 9, 1919 cannot be understood, when the letter is read as a whole, as implying any retraction of the asserted setoff. Indeed, even if the defendant's position were construed, as the appellant urges, as merely an appropriation of the deposit account to hold as security for its claims against Russia, we think the repudiation of liability was complete and unequivocal. A bank's contract duty to its depositor is to pay upon demand. A statement by the bank that it will not honor a demand unless and until the depositor shall pay a debt he owes the bank, is a clear repudiation of the bank's contract obligation, and gives the depositor an immediate cause of action. See Delahunty v. Central Nat. Bank, 37 App. Div. 434, 56 N.Y.S. 39.

There is some slight conflict in the affidavits as to incidental matters, but none as to essential facts respecting the setoff and the Ambassador's knowledge of it. Accordingly we believe that there was no disputed issue of fact to be tried to a jury, and that the district court correctly decided that the action was barred by the statute of limitations and properly awarded a summary judgment for the defendant.

Judgment affirmed.