**NGOC DUNG THI TRAN, Plaintiff,**

v.

**CITIBANK N.A., Defendant.**

**No. 83 Civ. 380–CSH.**

United States District Court,
S.D. New York.

Nov. 28, 1983.

Boal, Doti & Larsen, New York City, for plaintiff; Arthur M. Boal, New York City, of counsel.

Shearman & Sterling, New York City, for defendant; Henry Harfield, Danforth Newcomb, Jennifer Freeman, New York City, of counsel.

### MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

To this action by a depositor for payment of the deposited funds, defendant bank interposes the statute of limitations. The case is in the pleading stage, somewhat amplified by interrogatories. The following facts appear to be undisputed.

In April, 1975 plaintiff Ngoc Dung Thi Tran was a citizen and resident of South Vietnam. During that month she deposited funds in savings accounts at the First National City Bank of New York, Saigon. Defendant Citibank, N.A. is a national banking association engaged in the business of commercial banking. In 1975 Citibank conducted business under the name "First National City Bank of New York." In foreign countries Citibank operated under its then name, followed by the location of the branch (e.g., "First National City Bank of New York, Saigon"). The Saigon branch bank was wholly owned by First National City Bank of New York. The savings account passbooks issued to plaintiff were imprinted with the name "First National City Bank, New York," and contained no restrictions as to the office from which withdrawals could be made. Neither the pleadings nor the answers to interrogatories suggest that plaintiff's deposits were repayable solely in Saigon.

On or about April 24, 1975, Citibank, concerned for the security of its employees, closed its branch in South Vietnam and ceased doing all business there. Shortly

thereafter the former government of South Vietnam fell to communist forces. All foreign bank branches, including Citibank's Saigon branch, were confiscated by the new Vietnamese government.

Plaintiff fled from South Vietnam in April, 1975. She is now a resident of Philadelphia. She became a naturalized citizen of the United States in April, 1981.

Following her arrival in the United States, and at a time not revealed by the record, plaintiff inquired into the status of the funds she had deposited in defendant's Saigon branch. Defendant responded in a letter dated March 30, 1977, which reads in its entirety:

Mr. Dung Tran

c/o Girard Bank

3 Girard Plaza

Sixth Floor

Philadelphia, Pennsylvania 19101

Dear Mr. Tran:

This refers to an inquiry made in your behalf regarding funds you have deposited in our former Saigon branch. When Saigon fell in May 1975, we transferred all the assets and liabilities to our former branch to the Vietnamese government and they now have responsibilities for the same. Any inquiry you may therefore have on your deposits should be addressed directly to them:

State Bank of Vietnam

Southern Office

Ho Chi Minh City

Vietnam

Very truly yours,

Norberto C. Nazareno

Assistant Vice President

Plaintiff was not satisfied with this response, not only because defendant thought she was a man. Plaintiff filed suit in this Court to recover her deposit on January 12, 1983.

The complaint alleges jurisdiction based upon diversity of citizenship, 28 U.S.C. § 1332(a), and the banking laws, 12 U.S.C. § 632. Diversity would not appear to exist, having in mind plaintiff's status at the time suit was commenced. However, jurisdiction is properly founded upon 12 U.S.C. § 632. In either event, the statute of limitations considerations are the same.

The parties agree that New York limitations law governs. A shorter period under Vietnamese law is not suggested. A longer Vietnamese limitations period would not apply in view of New York's "borrowing" statute. N.Y. CPLR § 202.

Plaintiff's deposits in defendant's Saigon branch brought about a contractual relationship between the parties. In New York, an action upon a contractual obligation must be commenced within six years. CPLR § 213(2). That period of time is "computed from the time the cause of action accrued to the time the claim is interposed." CPLR § 203(a). These are general provisions. CPLR § 206(a)(2) applies particularly to bank deposits. It reads in pertinent part:

"(a) Where demand necessary. Except as provided in article 3 of the uniform commercial code, where a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete, except that ...

"2. where there was a deposit of money to be repaid only upon a special demand, ... the time within which the action must be commenced shall be computed from the demand for repayment or return."

CPLR § 206 was "[d]erived without substantial change" from former Civil Practice Act § 15. McLaughlin, *Practice Commentaries*, 7B McKinney's Consol.Laws of N.Y. (1972) at 220. The Court of Appeals construed CPA § 15 in *Tillman v. Guaranty Trust Co.*, 253 N.Y. 295, 171 N.E. 61 (1930). Plaintiff inquired concerning the status of a deposit account at defendant bank. Plaintiff did not demand payment at this time. Defendant replied that no deposit existed. The court held *per curiam* that this response caused plaintiff's cause of action for the money held on deposit to accrue. Accordingly the action commenced

more than six years later was time barred. Plaintiff relied unsuccessfully on CPA § 15 for the proposition that the time to sue did not commence until a demand for payment had been made. The court's rejection of the argument is instructive:

"The defendant in reply stated unequivocally that the plaintiff's assignors had no valid claim to any deposit and that the defendant held no 'balance' at their disposal. Thereafter no demand was necessary to entitle the plaintiff's assignors to maintain an action for the money on deposit. (*Riggs v. Palmer*, 115 N.Y. 506, [22 N.E. 188;] *Sokoloff v. National City Bank*, 250 N.Y. 69, [164 N.E. 745.) ] The period of limitation during which an action may be brought must be computed from the time of the accruing of the right to relief by action, except as otherwise specifically prescribed by statute. (Civ.Prac.Act, § 15.) Special rules prescribed in section 15 of the Practice Act govern the computation of periods of limitation where a right exists but a demand is necessary to entitle a person to maintain an action. So long as demand is necessary to entitle a depositor to bring an action, the provisions of section 15 apply. They have no application after right to relief by action is complete without demand. By failure to make a demand which is unnecessary, a depositor cannot prevent the period of limitation from running against a cause of action which he is entitled to maintain without demand." 253 N.Y. at 297, 171 N.E. 61.

 In the case at bar, Citibank did not proclaim a flat refusal to pay plaintiff. But the closing of its Saigon branch breached its contract with plaintiff. Defendant had bound itself to pay plaintiff money on demand in Saigon. That contract was broken on April 24, 1975 when the Saigon branch ceased to function. *Sokoloff v. National City Bank*, 250 N.Y. 69, 81, 164 N.E. 745 (1928). Plaintiff's cause of action accrued at that time. No demand at the Saigon bank was necessary, because in the circumstances it would have been futile. *Sokoloff v. National City Bank*, *supra*, at 80, 164 N.E. 745; *Vishipco Line*

*v. Chase Manhattan, N.A.*, 660 F.2d 854, 864–65 (2d Cir.1981), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982).

The issue is not that of defendant's liability as home office to the depositors of its abandoned foreign branch. Citibank does not contest that liability; nor under controlling case law could it do so. *Sokoloff v. National City Bank*, 239 N.Y. 158, 167, 145 N.E. 917 (1924); *Vishipco Line, supra*, at 864. The question is one of time bar. Because plaintiff's cause of action accrued in April 1974, when defendant closed its Saigon branch, suit in 1983 is untimely. CPLR § 206(a) avails plaintiff no more than CPA § 15 did the plaintiff in *Tillman v. Guaranty Trust Co., supra.*

Plaintiff relies upon Judge Broderick's unreported opinion in *Garcia v. Chase Manhattan Bank*, 77 Civ. 5340 (S.D.N.Y., decided June 7, 1983). The facts of *Garcia* differ. Plaintiff in *Garcia* sued on two certificates of deposit issued by defendant bank at its Verdado, Cuba branch. The court submitted the case to the jury on special interrogatories. Plaintiff had adduced evidence that the depositor purchased the certificates because of concern over the rise of Castro in Cuba. Bank employees at Verdado branch assured the depositor that he and his wife "could get their money back by presenting or sending the original certificate to any branch of defendant Chase, in or out of Cuba." Slip op. at 4–5. The depositor relied on those assurances. The jury found that "the parties agreed that payment would be made upon presentation and demand anywhere that Chase Manhattan had offices including Cuba." *Id.* at 30. Defendant moved for judgment n.o.v. after a verdict in plaintiff's favor. It argued *inter alia* that plaintiff's demands or defendant's disclaimers had triggered the six-year statute of limitations, which had run before suit was filed. The jury found that no prior demands had been made. Judge Broderick declined to construe defendant's responses to inquiries as an unequivocal disclaimer comparable to that in *Tillman v. Guaranty Trust Co., supra.* Considering "the evidence and all

the inferences therefrom ... in a light most favorable to the plaintiff," slip op. at 3, Judge Broderick let the jury verdict stand.

 While defendant's Verdado branch was confiscated by the Castro government in 1959, defendant does not appear to have argued, at least on its motion n.o.v., that this event triggered the statute of limitations. Judge Broderick does not address that issue in his June 7, 1983 opinion. The result may be explained by the special contract the jury found between the parties, which could be viewed as necessitating a demand notwithstanding the closing of the branch. If *Garcia* should be given a wider reading, I must respectfully decline to follow it. The Second Circuit held in *Vishipco Line* that "a demand is not necessary where the branch in which the deposit was maintained (or by which the CD was issued) has been closed." 660 F.2d at 864–65. In *Vishipco Line* and *Sokoloff*, the defendant banks argued that their depositors had no cause of action because they had not made demands upon the branches. The courts rejected the defense, reasoning that the law does not require what "would manifestly be futile." 250 N.Y. at 80, 164 N.E. 745. In the case at bar, a bank avails itself of a doctrine helpful to depositors in earlier cases. Defendant's reliance on the rationale of those cases is justified by *Tillman v. Guaranty Trust Co., supra.* Within the context of the statute of limitations, there is no difference between a disclaimer of deposit and the closing of the branch in which a deposit was maintained. Both events breach the bank's contract. Both do away with the necessity for a demand. Both give rise to an immediate cause of action.[1]

In consequence, the instant case is time barred. The Clerk is directed to dismiss the complaint with prejudice and without costs.

It is So Ordered.

---

1. Plaintiff also contends that the statute of limitations was tolled by CPLR § 209(a), which reads in pertinent part:
 "Cause of action accruing in foreign country. Where a cause of action ... accrued in a foreign country with which the United States or any of its allies were then or subsequently at war, or territory then or subsequently occupied by the government of such foreign country, the time which elapsed between the commencement of the war, or of such occupation, and the termination of hostilities with such country, or of such occupation, is not a part of the time within which the action must be commenced."
 Plaintiff argues that this provision suspends the statute of limitations "during the occupation of the territory of our ally South Vietnam," adding that to this date "our government has not recognized the communist forces as the legitimate government of the territory." Brief at 12. But § 209(a) does not contemplate the ultimate triumph of a government which the United States recognizes, with a concomitant indefinite suspension of the statute of limitations. Under the plain wording of the statute, the "termination of hostilities" puts an end to the tolling of the statute. It is not suggested that hostilities continued in which used to be South Vietnam within six years of the filing of suit. Assuming *arguendo* that plaintiff's cause of action accrued only in a foreign country—which is by no means that clear—§ 209(a) does not preserve it.