**TAT BA, Plaintiff,**

v.

**The CHASE MANHATTAN BANK, N.A. and Citibank, N.A., Defendants.**

**No. 83 Civ. 9421 (EW).**

United States District Court, S.D. New York.

Oct. 30, 1984.

Evans, Koelzer, Osborne & Kreizman, New York City, for plaintiff; Joel Kreizman, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant The Chase Manhattan Bank, N.A.; Paul T. Shoemaker, New York City, of counsel.

Shearman & Sterling, New York City, for defendant Citibank, N.A.; Jennifer Freeman, Rachel E. Deming, New York City, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

Defendants, The Chase Manhattan Bank, N.A. ("Chase") and Citibank, N.A. ("Citibank"), move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint upon the ground that it is barred by the applicable statute of limitations.

The allegations of the complaint are deemed admitted for the purposes of this motion.[1] Plaintiff, a citizen of the "former Republic of Vietnam" who now resides in the State of Washington, seeks to recover funds that he deposited in several accounts at the Saigon branches of Chase and Citi-

1. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89  S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969).

bank in February and March 1975. Most of the accounts involved certificates of deposit that matured between May and June 1975. The deposits were in piastres, the currency of the Republic of Vietnam. The defendants assert, and the plaintiff does not contest, that Chase's Saigon branch closed on April 24, 1975 and Citibank's Saigon branch also closed in April 1975 (no specific date is given); that Saigon fell to Communist forces on April 30, 1975; and that the Communist government confiscated all funds on deposit in the banks on May 1, 1975.

Plaintiff left Vietnam in October 1976 for Malaysia, where he remained until September 1977 when Canada accepted him as a refugee; in September 1981 he moved to the Seattle, Washington area, his current residence. He has not been paid by the defendants, and on December 28, 1983 he commenced this action to recover the funds deposited at the defendants' Saigon branches with interest from the dates of deposit. Thus, the action was commenced nearly nine years after the banks closed their Saigon branches and the Communist government confiscated the funds.

Jurisdiction is based upon diversity of citizenship[2] and the federal banking laws.[3] Since federal law provides no applicable statute of limitations, New York law governs the timeliness of this action.[4] Under New York law, an action to recover bank deposits is one in contract[5] and thus must be commenced within six years after the cause of action accrues.[6] Thus, the critical issue is when plaintiff's cause of action accrued. The parties are in agreement that as to bank deposits a depositor generally must make a demand for payment of his deposit before his cause of action accrues and the statute of limitations starts to run.[7] However, the defendants rely upon an exception to this rule that applies in those instances when demand would be manifestly futile. They rely upon a series of cases applying New York law which in substance hold that when a demand for the return of a deposit would be manifestly futile, as in the instance of the closing of a branch bank and the seizure of its funds by a foreign government under conditions of war or revolution, demand need not be made in order to maintain an action to recover the deposit.[8] Accordingly, defendants contend that plaintiff's cause of action accrued when the Saigon branches were closed in April 1975 due to turbulent conditions followed by confiscation by the Communist regime of all funds on deposit at the branches; that since this action was commenced almost nine years after the closing of the branches and the seizure of the funds, of which plaintiff had knowledge, his claim is barred by New York's six-year limitation period for breach of contract claims.

Plaintiff appears to contend that, although the defendants' Saigon branches closed and the funds were seized by the Communist regime, the parent banks in the United States remained operative and therefore obligated to perform under the deposit contracts outside Vietnam; that his

2. 28 U.S.C. § 1332(a) (1983).

3. 12 U.S.C. § 632 (1983).

4. *See Garcia v. Chase Manhattan Bank,* 735 F.2d 645, 648 n. 2 (2d Cir.1984). New York's "borrowing statute" provides that an action by a nonresident must be timely under both the law of New York and the law of the place where the cause of action accrued, if other than New York. N.Y.Civ.Prac.Law § 202 (McKinney 1972). Because the Court finds that plaintiff's action is time-barred under the applicable New York statute of limitations, Vietnamese law need not be considered.

5. *See Sokoloff v. National City Bank,* 250 N.Y. 69, 81, 164 N.E. 745, 749 (1928); *Delahunty v.*

*Central Nat'l Bank,* 37 A.D. 434, 436, 56 N.Y.S. 39, 40 (1st Dep't 1899).

6. N.Y.Civ.Prac.Law § 203(a); 213(2) (McKinney 1972 & Supp.1983).

7. N.Y.Civ.Prac.Law § 206(a)(2) (McKinney 1972); N.Y.U.C.C. § 3–122(2) (McKinney 1964).

8. *See Vishipco Line v. Chase Manhattan Bank,* 660 F.2d 854, 864–65 (2d Cir.1981), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982); *Ngoc Dung Thi Tran v. Citibank,* 586 F.Supp. 203, 205 (S.D.N.Y.1983); *Sokoloff,* 250 N.Y. at 80, 164 N.E. at 749.

cause of action did not accrue until he received from the banks "an unequivocal indication that he may not obtain such performance"—that is, a refusal to return the deposits; and that whether the defendants' responses to inquiries made by plaintiff in 1978 and 1982 about his accounts [9] constitute "the requisite unequivocal repudiation[s]" is a factual issue that forecloses dismissal of the complaint. The defendants counter that unequivocal repudiation is not the only instance in which demand is excused, that, as the New York Court of Appeals has noted, "where the bank has disclaimed liability, *or for any other reason the demand would manifestly be futile*, none need be made." [10] Thus, they contend that in the instant case, when the Saigon branches were closed under turbulent or revolutionary conditions and branch funds were seized by a political entity, a demand by plaintiff in Saigon would have been manifestly futile and that the situation gave rise to an immediate cause of action for breach of contract in April 1975.[11]

The issue here is whether the defendants breached the deposit contracts with plaintiff when they closed their Saigon branches under turbulent and revolutionary conditions with the prospect of imminent seizure of the deposits (which in fact occurred) by a political entity. If the closings under such circumstances entitled plaintiff to take immediate legal action against defendants to recover his deposits without a demand therefor, then his cause of action accrued at that time and must be dismissed as untimely, not having been commenced within six years after the Saigon branches closed. Although New York law does not definitively address this issue, the cases indicate that the closings under the attendant circumstances should be regarded as breaches of the deposit contracts and that such breaches start the limitation period without a demand.

The New York Court of Appeals explained the exception to the statutory demand requirement in *Tillman v. Guaranty Trust Co.*[12] In that case, the depositor had inquired of the bank, without making a demand, about the status of the account, and the bank "in reply stated unequivocally that the plaintiff's assignors had no valid claim to any deposit and that the defendant held no 'balance' at their disposal."[13] The Court of Appeals held that "[t]hereafter no demand was necessary to entitle the plaintiff's assignors to maintain an action for the money on deposit," and that "[b]y failure to make a demand which is unnecessary, a depositor cannot prevent the period of limitation from running against a cause of action which he is entitled to maintain

**9.** An affidavit submitted by plaintiff in opposition to the motion indicates that starting in March 1978 he wrote a number of letters to Chase in New York inquiring about "any possibilities of claiming my deposits at your Saigon branch." Chase responded by letter dated June 21, 1978: "Because the Chase has had no control over the Branch for three years, we cannot arrange for liquidation of the accounts. The deposit liabilities are, of course, those of the Branch, which is still subject to the laws of Viet-Nam." In January 1982, plaintiff, then a resident of the State of Washington, again wrote to Chase in New York and inquired "regarding any chance of recover [sic] my deposit." Chase responded that "the Chase Saigon branch was confiscated in 1975 by the new government of Vietnam" and that "the central bank in Vietnam is the sole banking enterprise in that country and is operating the banking business formerly conducted by private banks" and suggested that plaintiff direct his inquiries about his account to that entity. In August 1982, plaintiff wrote to Citibank's Portland, Oregon branch "ask[ing] your favor to let me have the money back," but Citibank's New York office responded the following month that it could do nothing to help him. In September 1982, he sought to enlist the assistance of the United States Treasury Department in the recovery of his deposits, but in November 1982 the Department suggested that he contact the National Bank of Vietnam. This he had already tried and had received no reply. Finally, approximately one year later, plaintiff commenced this action against the banks.

**10.** *Sokoloff,* 250 N.Y. at 80, 164 N.E. at 749 (emphasis added).

**11.** *See Tran,* 586 F.Supp. at 206.

**12.** 253 N.Y. 295, 171 N.E. 61 (1930) (*per curiam*).

**13.** *Id.* at 297, 171 N.E. at 61.

without demand." [14]   In sum, the depositor was entitled to sue and the limitation period ran without a demand because the bank had breached the deposit contract by its announced refusal to make payment.

*Tillman* focused on the legal effect of a repudiation, not a branch closing.  Under the rationale of that case, however, a branch closing would also start the limitation period if the closing constituted a breach of the deposit contract.  In an earlier case, *Sokoloff v. National City Bank,*[15] the New York Court of Appeals indicated that the closing of a foreign branch where deposits are payable on demand is a breach of the deposit contract.  *Sokoloff* involved a deposit account maintained at the defendant's branch in Petrograd, Russia, which ceased operation when it was seized by the new Soviet government in 1918.  The court held that the depositor was entitled to maintain an action to recover the deposits against the parent bank without having made a demand for payment at the Petrograd branch.  In so holding, the court stated:

> The contract between Sokoloff and the bank was to pay rubles at the Petrograd Branch whenever he demanded them.  They were to be held there, under contract, on his call.  Should the bank fail to meet the depositor's demand in Petrograd up to the limit of the deposit, the contract would be broken.  When the bank ceased to do business so that Sokoloff, who wanted his money, could not make a demand and could not draw upon his account, the contract was broken.[16]

The court then held that damages in that action, which the depositor had elected to treat as one for breach of contract, would be measured as of September 1, 1918, when the Petrograd branch ceased to function.[17]

*Sokoloff* does not completely dispose of the instant case.  The Court of Appeals did not state that demand was excused specifically because the closing breached the deposit contract.  Rather, the court stated:

> The fact that the bank had gone out of business on that date made a demand useless and unnecessary; the law by reason of the contract between the parties will consider the case as if a demand had been made.  In other words, that which becomes impossible and useless ceases to be required by the law in cases like this.[18]

The clear tenor of this language is that demand was excused because it would have served no useful purpose.  This rationale raises the question whether demand was also excused at the bank's home office, which was functioning and at which demand would not have been futile in a practical sense.  Because timeliness was not at issue, there was no need for the court to consider whether demand was still required at the bank's home office and, if so, whether such a demand or the branch closing would start the limitation period.  Thus, it could be argued that the closing breached the deposit contract for purposes of measuring damages but did not itself give rise to a cause of action against the parent bank absent a demand upon and refusal by the parent bank.

This argument appears to be foreclosed by *Richard v. National City Bank.*[19]  In

---

14.  *Id.,* 171 N.E. at 61, 62.

15.  250 N.Y. 69, 164 N.E. 745 (1928).

16.  *Id.* at 81, 164 N.E. at 749 (citation omitted).

17.  *Id.* at 81–82, 164 N.E. at 750.

18.  *Id.* at 80, 164 N.E. at 749.

19.  231 A.D. 559, 248 N.Y.S. 113 (1st Dep't 1931); *see United States v. First Nat'l City Bank,* 379 U.S. 378, 405 & n. 27, 85 S.Ct. 528, 542 & n. 27, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting) ("The bank account is a contract for payment on demand at the Montevideo [Uruguay] branch.  If demand were wrongfully refused, a cause of action for breach of contract would be created on which [the depositor] could sue in New York [the home office].  Thus, analytically, it is not the account itself which would become payable in New York, but damages for breach of the contract to pay on demand in Montevideo."); *United States v. First Nat'l City Bank,* 321 F.2d 14, 20 (2d Cir.1963) "[I]f the branch be closed or if demand for payment is refused at the branch, an action against the main office will lie."), *rev'd on other grounds,* 379 U.S. 378, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965).

that case, plaintiffs commenced an action in New York to recover deposits made at the defendant's Petrograd branch before it closed in 1918. No demand had been made, either in Petrograd or New York; indeed, the first time the defendant knew that plaintiffs desired payment was when the suit was begun in 1924.[20] Plaintiffs' right to maintain the action without a demand upon the parent bank was not at issue. However, with regard to the measure of damages, the defendant argued, *inter alia*, that "in the absence of any demand other than the bringing of the suit, the value of the ruble deposit must be estimated, not at the time the Petrograd branch was closed, but at the time when suit was brought."[21] The court rejected the argument without discussion, stating that "the plaintiffs are entitled to the value of rubles *at the time and place of the breach,* which was Petrograd, on the 1st day of September, 1918, when the Petrograd branch was closed."[22]

After a branch closing of the kind that occurred in *Sokoloff* and *Richard,* and the instant case, a depositor's right to relief by action against the parent bank is complete without a demand of any kind at any location. Under the rule in *Tillman,* therefore, such a closing also starts the limitation period. Judge Haight of this district court recently reached this conclusion in *Ngoc Dung Thi Tran v. Citibank,*[23] which also involved deposits made at Citibank's Saigon branch shortly before it closed in April 1975. Acknowledging that Citibank, unlike the bank in *Tillman,* had not "proclaim[ed] a flat refusal to pay plaintiff," Judge Haight stated:

> Within the context of the statute of limitations, there is no difference between a disclaimer of deposit and the closing of the branch in which a deposit was main-

tained. Both events breach the bank's contract. Both do away with the necessity for a demand. Both give rise to an immediate cause of action.[24]

Judge Haight dismissed the action because it had not been commenced within six years after the Saigon branch had closed.

*Vishipco Line v. Chase Manhattan Bank*[25] and *Garcia v. Chase Manhattan Bank,*[26] cited by plaintiff, do not require a different result. In *Vishipco Line,* which also involved deposits made at the bank's Saigon branch, our Court of Appeals held that a parent bank is ultimately liable on the deposit contracts made by its foreign branches.[27] The issue of ultimate liability on a deposit contract should not be confused, however, with that of when a breach of the contract occurs and a claim thereunder accrues. That a parent bank remains liable for deposits made at a branch bank after the branch bank has closed and its funds have been seized does not address the issue of when the deposit contract was breached and a cause of action to recover the deposits accrued. In *Garcia,* a depositor had inquired of the parent bank about her account at the bank's Vedado, Cuba branch, which had closed after Fidel Castro came to power in 1959. Our Court of Appeals held that the parent bank's response to the inquiry was not an unequivocal repudiation of the deposit contract as a matter of law and that the limitation period therefore had not started to run without a demand.[28] Whether the branch closing had excused demand and started the limitation period sooner was not before the court.

Because plaintiff failed to commence this action within six years after the defendants' Saigon branches closed and his deposit contracts were breached, this action is

---

**20.** *Id.* 231 A.D. at 567, 248 N.Y.S. at 121, 122 (McAvoy, J., dissenting).

**21.** *Id.* at 560, 248 N.Y.S. at 114.

**22.** *Id.* at 565–66, 248 N.Y.S. at 120 (emphasis in original).

**23.** 586 F.Supp. 203 (S.D.N.Y.1983).

**24.** *Id.* at 205, 206 (footnote omitted).

**25.** 660 F.2d 854 (2d Cir.1981), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982).

**26.** 735 F.2d 645 (2d Cir.1984).

**27.** *See Vishipco Line,* 660 F.2d at 863–64.

**28.** *See Garcia,* 735 F.2d at 648–49.

time-barred under New York law. The defendants' motion to dismiss the complaint is granted.

So ordered.