**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LIEN HUYNH; VOONG SY PHUNG,
a/k/a Phung Sy Wong; CHUN
HUYNH; NGOC BICH HUYNH; DIEU
MINH NU; CONG TON; PHI VU
HOANG NGUYEN; TRAN QUANG TRI,
a/k/a Chris Tran, individually and
on behalf of all persons similarly
situated,

*Plaintiffs,*

and

TUOI PHAM FOSTER, a/k/a Tuoi Thi
Pham; TRUONG DAC PHUNG; KIM
THI TON-NU, a/k/a Ton Nu Thi
Kien; HUY LE THI TRAN, a/k/a
Julie Doan Tran; NANCY LE
NGUYEN, a/k/a Nga Thi Le; HUAN
TRAN DANG; DINH VU NGUYEN;
TOA-ANH THI NGUYEN; BICH-DAO
THI HO; HONG-DUC THAI VAN; TAI
DINH NGUYEN; THUONG VAN
NGUYEN; VAN CAM T. NGUYEN;
NGUYEN THI RI; PHUNG THI
NGUYEN; THACH THI PHAM;
GERARDUS FERNANDEZ; HONG T.
FERNANDEZ; XUA THI DUONG; DIEN
T. NGUYEN; VIVIAN NGUYEN DANG,
individually and on behalf of all
persons similarly situated,

*Plaintiffs-Appellants,*

v.

No. 04-56105

D.C. No.
CV-03-07748-TJH

12021

CHASE MANHATTAN BANK, a New
York corporation; CITIGROUP INC.,
a Delaware corporation f/k/a First
National City Bank,
                    *Defendants-Appellees,*
            and
BANK OF AMERICA CORPORATION, a
Delaware corporation,
                    *Defendant.*

LIEN HUYNH; VOONG SY PHUNG,
a/k/a Phung Sy Wong; CHUN
HUYNH; DIEU MINH NU; CONG TON;
PHI VU HOANG NGUYEN; TRAN
QUANG TRI, a/k/a Chris Tran,
individually and on behalf of all
persons similarly situated; TUOI
PHAM FOSTER, a/k/a Tuoi Thi
Pham; TRUONG DAC PHUNG; KIM
THI TON-NU, a/k/a Ton Nu Thi
Kien; HUY LE THI TRAN, a/k/a
Julie Doan Tran; NANCY LE
NGUYEN, a/k/a Nga Thi Le; HUAN
TRAN DANG; DINH VU NGUYEN;
TOA-ANH THI NGUYEN; BICH-DAO
THI HO; HONG-DUC THAI VAN; TAI
DINH NGUYEN; THUONG VAN
NGUYEN; VAN CAM T. NGUYEN;
NGUYEN THI RI; PHUNG THI
NGUYEN; THACH THI PHAM;

No. 05-55091
D.C. No.
CV-03-07748-TJH
OPINION

GERARDUS FERNANDEZ; HONG T.
FERNANDEZ; XUA THI DUONG; DIEN
T. NGUYEN; VIVIAN NGUYEN DANG,
individually and on behalf of all
persons similarly situated,
                    *Plaintiffs,*

            and

NGOC BICH HUYNH, individually
and on behalf of all persons
similarly situated,
                    *Plaintiff-Appellant,*

            v.

CHASE MANHATTAN BANK, a New
York corporation; CITIGROUP INC.,
a Delaware corporation f/k/a First
National City Bank,
                    *Defendants,*

            and

BANK OF AMERICA CORPORATION, a
Delaware corporation; CHIAO TUNG
BANK CO., a Republic of China
corporation, f/k/a Bank of
Communications,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Chief District Judge, Presiding

Argued and Submitted
April 3, 2006—Pasadena, California

Filed September 28, 2006

Before: Dorothy W. Nelson and Diarmuid F. O'Scannlain, Circuit Judges, and Robert C. Jones,* District Judge.

Opinion by Judge D.W. Nelson

---

*The Honorable Robert C. Jones, District Judge for the District of Nevada, sitting by designation.

**COUNSEL**

Federico C. Sayre, Mark S. Brown, Law Offices of Federico C. Sayre, Santa Ana, California; Thu-Cuc T. Phung, Westminster, California; Bicvan Thi Brown, New Port Beach, California, for the plaintiffs-appellants.

Richard B. Kendall, Melissa R. McCormick, Irell & Manella, LLP, Los Angeles, California, for defendants-appellees The Chase Manhattan Bank and Citigroup, N.A. Angela L. Padilla, Robert S. Stern, Morrison & Foerster, LLP, Los Angeles, California, for defendant-appellee Chiao Tung Bank Co.

**OPINION**

D.W. NELSON, Senior Circuit Judge:

Proposed class representatives of Vietnamese bank depositors seek to recover the dollar value of bank deposits made in Saigon, South Vietnam, before April 1975. On appeal, they challenge the district court's orders dismissing as time-barred their complaint against Citibank, N.A. (Citibank), The Chase Manhattan Bank (Chase), and Chiao Tung Bank (Chiao Tung). We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm, discussing many of the heretofore unaddressed issues raised by this case.

**I**

After several years of conflict, Saigon, the capital of the Republic of Vietnam (South Vietnam), was surrendered

unconditionally to the Democratic Republic of Vietnam (North Vietnam) on April 30, 1975. The history of these events has been chronicled elsewhere by the federal courts. *See, e.g.*, *Trinh v. Citibank*, *N.A.*, 850 F.2d 1164, 1165-66 (6th Cir. 1988); *Vishipco Line v. Chase Manhattan Bank*, *N.A.*, 660 F.2d 854, 857-58 (2d Cir. 1981). Thus, it suffices to mention here that, during the unrest immediately preceding the regime change, several foreign banks closed the branches they had been operating in Saigon.

Lien Huynh, Tuoi Pham Foster, and other proposed class members (Appellants) allege that, at the time of these unannounced closures, each proposed class representative had South Vietnamese piastres on deposit at the Saigon branch of a foreign bank. The alleged balance of each named plaintiff's account as of April 1975 ranges from $226.16 to $20,073.68 (at an exchange rate of 755 piastres to the dollar).

Some twenty-eight years later, on September 26, 2003, Appellants filed their first amended complaint[1] in Los Angeles County Superior Court seeking to recover the dollar value of their piastre-denominated bank deposits from seven non-Vietnamese banks. Among those banks were the three banks party to the instant appeal: Citibank, and Chase, both U.S.-charted banking corporations headquartered in New York, as well as Chiao Tung, a Taiwanese banking corporation.

Citibank removed the case to federal court on October 29, 2003. Before the district court, Citibank and Chase jointly moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), claiming that the action was time-barred by the New York statute of limitations governing claims arising from contract and fraud. Separately, Chiao Tung moved to dismiss the complaint as barred by the statute

---

[1]Appellants filed their original complaint on April 11, 2003, but they did not serve that complaint on any of the seven defendants. We refer to the first amended complaint as the complaint.

of limitations under California, Vietnamese, and Taiwanese law. In support of its motion, Chiao Tung requested that the district court take judicial notice of the statutes of limitations in both Taiwan and Vietnam, providing declarations in support thereof. No other evidence of foreign law was offered before the district court.

The district court granted both motions, and this timely appeal followed.

## II

The case before us presents an intertwined issue of statute of limitations and choice of law questions, which we review *de novo*. *See Oja v. U.S. Army Corps of Engineers*, 440 F.3d 1122, 1127 (9th Cir. 2006) (statute of limitations questions); *Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003) (choice of law). Accepting as true the allegations in the complaint, as we must when reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988), we must determine whether "the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.").

Addressing a similar question in *Cruz v. United States*, 387 F. Supp. 2d 1057 (N.D. Cal. 2005), the district court adopted the following analytical framework:

> First, the Court must decide what choice-of-law rule governs the selection of the statute of limitations. Second, the Court must apply that rule to determine which jurisdiction's limitations law applies. Third, and finally, the Court [must] determine whether

plaintiffs' claims fall within the relevant limitations period.

*Id.* at 1070. We endorse and apply this approach.

**[1]** Chase removed this action to federal court pursuant to 12 U.S.C. § 632, which invests in the federal courts original jurisdiction over cases arising out of foreign banking transactions to which a U.S. corporation is a party. Therefore, our jurisdiction is not based on diversity of citizenship. In this context, federal common law choice-of-law rules apply. *See Chuidian v. Philippine Nat'l Bank*, 976 F.2d 561, 564 (9th Cir. 1992) (holding that, where jurisdiction is not premised on diversity of citizenship, federal common law governs); *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991) (same).

Federal common law follows the approach outlined in the Restatement (Second) of Conflict of Laws. *Id.* Accordingly, barring exceptional circumstances, we consider the following factors:

(1)   The forum will apply its own statute of limitations barring the claim.

(2)   The forum will apply its own statute of limitations permitting the claim unless:

  (a)   maintenance of the claim would serve no substantial interest of the forum; and

  (b)   the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

Restatement (Second) of Conflicts of Law § 142 (1988). The formulation of this rule is intended to reflect the general

choice-of-law principles stated in Restatement (Second) of Conflicts of Law § 6. *See* Restatement (Second) of Conflicts of Law § 142.

## A

**[2]** Applying § 142, we must first consider whether applicable California law—the forum state—bars Appellants' claims. We conclude that California law does not bar Appellants' claims against Citibank or Chase, but it does bar the claims against Chiao Tung.

**[3]** Under the California Code of Civil Procedure there is no time limitation on an action brought to recover bank deposits. Cal. Civ. Proc. Code § 348.[2] However, a borrowing statute limits that broad rule where, as here, the circumstances giving rise to the cause of action occurred outside of the state:

> When a cause of action has arisen . . . in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this State. . . .

Cal. Civ. Proc. Code § 361. California's borrowing statute, in turn, includes an exception providing that, if one is a "citizen of th[e] State" who has held the cause of action since it accrued, § 361 will not prevent his or her claim. Cal. Civ. Proc. Code § 361.

**[4]** Appellants' complaint indicates that most named plaintiffs are "residents" of California. Therefore, reading the complaint with the required liberality, *see Jablon*, 614 F.2d at 682, many of the proposed class members may be citizens of Cali-

---

[2]In relevant part, § 348 states, "To actions brought to recover money or other property deposited with any bank . . . there is no limitation." Cal. Civ. Proc. Code § 348.

fornia who could benefit from the borrowing statute's "citizen of the State" exception. This exception has been read to apply only where the plaintiff was a citizen *at the time* his or her claim accrued. *See, e.g.*, *Cossman v. DaimlerChrysler Corp.*, 133 Cal. Rptr. 2d 376, 382 (Ct. App. 2003); *Flowers v. Carville*, 310 F.3d 1118, 1124 (9th Cir. 2002). Thus, whether Appellants can avail themselves of the exception—and, thereby, escape a potential foreign statute of limitations bar— turns on when California law deems the cause of action to have "accrued."

**B**

**[5]** We have never considered, under California or any other law, when a claim for a return of a bank deposit starts to accrue. Relying on *Edelmann v. Chase Manhattan Bank*, 861 F.2d 1291 (1st Cir. 1988) and *Garcia v. Chase Manhattan Bank*, 735 F.2d 645 (2d Cir. 1984), Appellants urge that their claims accrued upon their formal demand for payment. That demand occurred, they argue, only when they filed the complaint. *See Edelmann*, 861 F.2d at 1305 (holding that "the statute of limitations on the parent bank's indebtedness begins to run from the date of demand"); *Garcia*, 735 F.2d at 648-49 (concluding that in the absence of an unequivocal repudiation, "the statute of limitations did not begin to run until a demand was made"). Neither *Edelmann* nor *Garcia*, each addressing the issue under the laws of New York, is instructive with respect to the laws of California.

In California, we know of few cases discussing either demand or accrual in relation to a cause of action to recover a bank deposit. Despite the dearth of case law, which is natural given that there is no statute of limitations on such claims, it appears that California does not subscribe to the demand requirement promulgated by *Garcia* and *Edelmann*:

> [W]here a right has fully accrued, except for some demand to be made as a condition precedent to legal

> relief, which the claimant can at any time make, if he so chooses, the cause of action has accrued for the purpose of setting the statute of limitations running. . . . Otherwise, . . . he might indefinitely prolong his right to enforce his claim or right by neglecting to make the demand until it suited his convenience so to do.

*Taketa v. State Bd. of Equalization*, 231 P.2d 873, 875 (Cal. Ct. App. 1951) (internal quotation marks omitted). Instead, the statute of limitation begins to run when the individual *could* have made a demand. *See, e.g.*, *Carrasco v. Greco Canning Co.*, 137 P.2d 463, 465 (Cal. Ct. App. 1943); *People v. Honey Lake Valley Irr. Dist.*, 246 P. 819, 820 (Cal. Ct. App. 1926)*; Miguel v. Miguel*, 193 P. 935, 936 (Cal. 1920) ("That a cause of action for money payable on demand accrues with the inception of the obligation and without the necessity for any demand hardly requires the citation of authority.").

In apparent conflict, several California cases indicate that Appellants' cause of action accrued not when a demand *could* have been made but when a demand was made. *See Union Tool Co. v. Farmers & Merchants Nat'l Bank of Los Angeles*, 218 P. 424, 429-430 (Cal. 1923) (recognizing "the general rule that there is no default on the part of the bank, and hence no accrual of a cause of action against it to recover the balance of a general deposit until its payment is demanded or there is some act on the part of the bank dispensing with such demand."); *Glassell Devl. Co. v. Citizens' Natl. Bank of Los Angeles*, 216 P. 1012 (Cal. 1923); *Zuck v. Culp*, 59 Cal. 142, 148 (1881).

[6] We need not attempt to resolve this potential conflict here because, even were we to conclude that the latter cases governed, it is absolutely clear that California law imposes limits on Appellants' freedom to choose when to make their demand:

> [N]o one can suspend the running of the statute of limitations indefinitely and thereby defeat its purpose by unreasonably delaying the making of a demand or by unreasonably delaying the doing of some other act. . . . A party cannot by his own negligence, or for his own convenience, stop the running of the statute.

*O'Hair v. U.S. Fidelity & Guaranty Co.*, 49 P.2d 1129, 1130 (Cal. Ct. App. 1935) (internal quotation marks omitted); *see also Phillis v. City of Santa Barbara*, 40 Cal. Rptr. 27, 31 (Ct. App. 1964) ("[O]ne . . . cannot postpone the running of the statute of limitation by failing for an unreasonable period to thus assert his right, and unless the demand is made within such period the cause of action is barred."). Rather, the linchpin of the demand requirement is that "the demand must be made within a reasonable time after it can lawfully be made." *Stafford v. Oil Tool Corp.*, 284 P.2d 937, 939 (Cal. Ct. App. 1955); *see also Vickrey v. Maier*, 129 P. 273, 275 (Cal. 1913); *Bogart v. George K. Porter Co.*, 223 P. 959 (Cal. 1924); *Phillis*, 40 Cal. Rptr. at 31; *Brock v. W. Nat'l Indem. Co.*, 281 P.2d 571, 576 (Cal. Ct. App. 1955); *Ilse v. Burgess*, 83 P.2d 527, 529 (Cal. Ct. App. 1938).

**[7]** At the very least, the complaint demonstrates that Appellants "continually" have known about Appellees' alleged refusal to return their deposits since 1975. Indeed, the complaint alleges that "[a]fter the fall of the government in Saigon, Defendants continually represented . . . and continue to represent to Plaintiffs that they were released from their obligations. . . ." Yet, Appellants offer no explanation why they failed to seek redress. Thus, the three decade delay does not appear reasonable.[3]

---

[3]In any event, Appellants' interactions with Citibank and Chase since 1975 may have constituted a demand under California law. Appellants allege that they have been "constantly thwarted in their attempts to recover funds"; they allege that the banks "unjustly blocked accounts," "refused

**[8]** Moreover, the same cases acknowledging the demand requirement for bank deposits explain that the statute of limitations begins to run not only when demand is made but also when "there is some act on the part of the bank dispensing with such demand." *Glassell*, 216 P. at 1016 (citing cases); *see also Union Tool*, 218 P. at 429. Therefore, "[w]here . . . the bank, either in terms or in effect, has denied liability to the depositor for the amount in question" the demand requirement is inapplicable and the statute of limitations is set in motion. *Glassell*, 216 P. at 1016; *see also Union Tool*, 218 P. at 429. We are convinced that the closure of the banks, followed by their continual representations to Appellants that the banks were released of their obligations unequivocally—both "in terms and in effect"—constituted such a denial of liability dispensing with the demand requirement. *See Mitchell v. Beckman*, 28 P. 110, 112 (Cal. 1883) (holding that a bank defaulted on deposits only "when it closed its doors, and by its acts spoke as significantly as words to that effect: 'We refuse to pay any one. It is useless to present your bank-book or demand . . . .'").

**[9]** Thus, whether or not there is a demand requirement under California law, Appellants' cause of action accrued no later than April 1975, when they allege that Citibank, Chase, and Chiao Tung ceased operations in Saigon. Appellants were not citizens of California at that time,[4] so they are subject to

to return the looted assets," and "refus[ed] to allow withdrawals." Even construing the complaint in the light most favorable to Appellants, we must infer from these allegations that Appellants attempted to recover their deposits, make withdrawals from their accounts, and reacquire the looted assets. In California, it appears that such actions constitute demands sufficient to start the statute of limitations running. *See Bills v. Silver King Mining Co.*, 39 P. 43, 45 (Cal. 1895) (holding that "no particular form of demand is necessary" and an inquiry regarding payment was sufficient to start the statute of limitations running).

[4]Appellant Gerardus Fernandez, a California resident and Chase depositor, was a U.S. serviceman stationed in South Vietnam at the time of the

California's borrowing statute. Therefore, whether Appellants' action is barred by California law is dependent on the law of Vietnam (where the cause of action arose).

## III

### A

**[10]** In determining whether Appellants' claims would be barred in Vietnam, we are faced with divergent interpretations of Vietnamese law. Properly in the record on appeal is an expert declaration analyzing Vietnamese law, accompanied by translations of the relevant legal texts, offered by Chiao Tung before the district court. That declaration concludes that Appellants' claims are barred by Vietnamese law. Appellants request that we take judicial notice of its opposing expert declaration, which was not before the district court. That declaration concludes that either Vietnamese law does not bar Appellants' claims or the statute of limitations has been tolled for depositors who left Vietnam.

**[11]** We need not resolve these conflicting interpretations of Vietnamese law. "It is rarely appropriate for an appellate court to take judicial notice of facts that were not before the district court." *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 392 n.7 (9th Cir. 2000). Rather, an appellant "must bear the burden of a factual record that is incomplete on the issues [he] raises." *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990) (internal quotation marks omitted) (citation omitted). These principles counsel powerfully against noticing Appellants' declaration because they did not object to (or even address) Chiao Tung's request for judicial notice.

bank's closure. Drawing inferences in his favor, we must assume he was a citizen of California when the cause of action accrued, so he benefits from the citizen of the state exception to Cal. Civ. Proc. Code § 361. For the reasons expressed in Section III.B, his claims are, nevertheless, time-barred.

**[12]** We will not reward Appellants on appeal for their lack of diligence before the district court, so we are left with only Chiao Tung's interpretation of Vietnamese law. Under that interpretation, the Vietnamese statute of limitations bars Appellants' causes of action. Thus, we conclude that the dismissal of the complaint against Chiao Tung was proper.

## B

**[13]** In their separate motion to dismiss, however, Citibank and Chase did not raise Vietnamese law, nor did they offer any interpretation thereof.[5] Under the Restatement—and, therefore, federal common law—the law of the forum determines the standards of proof of the content of foreign law, as well as the effect of a party's failure to show the content of foreign law. Restatement (Second) of Conflict of Laws § 136. Accordingly, we return to California law and conclude that Citibank and Chase cannot benefit from arguments they did not make and evidence they did not offer. Rather, where foreign law is applicable but it is neither pled nor proven, California permits the court to apply the law of California. Cal. Evid. Code § 311;[6] *Gagnon Co. v. Nev. Desert Inn*, 289 P.2d

---

[5]In fact, the banks have spent considerable time and energy arguing erroneously that Vietnamese law cannot and should not apply.

[6]That rule provides:

> If the law of an organization of nations, a foreign nation or a state other than this state, or a public entity in a foreign nation or a state other than this state, is applicable and such law cannot be determined, the court may, as the ends of justice require, either:
>
> > (a) Apply the law of this state if the court can do so consistently with the Constitution of the United States and the Constitution of this state; or
> >
> > (b) Dismiss the action without prejudice or, in the case of a reviewing court, remand the case to the trial court with directions to dismiss the action without prejudice.

Cal. Evid. Code § 311. We can discern no reason that the "ends of justice" would prevent the court from applying California law.

466, 471 (Cal. 1955); *Ferrell v. S. Nev. Off-Road Enthusiasts, Ltd.*, 195 Cal. Rptr. 90, 92 (Ct. App. 1983).

**i**

**[14]** As discussed above, California does not impose a statute of limitations on actions to recover bank deposits, Cal. Civ. Proc. Code § 348, so Appellants' actions against Citibank and Chase are not time-barred in the forum state. That conclusion, however, does not end our analysis. If the action is not barred by the law of the forum state, we must, nevertheless, ask (1) whether the forum state has a substantial interest in the claim and (2) whether the laws of any other jurisdiction with "a more significant relationship to the parties" bars the action. Restatement (Second) of Conflict of Laws § 142(2).

**[15]** Primarily, Appellants argue that California has a substantial interest in this action because all but two of the proposed class representatives, as well as "the worlds [sic] largest expatriate community of Vietnamese," reside in California.[7] As noted above, only one of these California residents was a resident of the state at the time his cause of action accrued. Yet, California "courts have consistently declined to recognize after-acquired residence as a source of governmental interest on the grounds that consideration of this factor would encourage forum shopping." *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989) (citing cases); *see also Cossman v. DaimlerChrysler Corp.*, 133 Cal. Rptr. 2d 376,

---

[7]We do not reach Appellants' only other argument in this respect—that, after the surrender of Saigon to North Vietnam, Citibank and Chase perpetuated their fraud in California by soliciting deposits at refugee camps, including one at Camp Pendleton, California. The specific allegation is made with reference only to unidentified class members; not one of the proposed class representatives alleges that he or she was defrauded in this manner. It is well settled that "[a]t least one *named* plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class." *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1973)).

382 (Ct. App. 2003); *Giest v. Sequoia Ventures, Inc.*, 99 Cal. Rptr. 2d 476, 478 (Ct. App. 2001). There is every indication, then, that California itself would disclaim interest in the action. *Cf. Reich v. Purcell*, 63 Cal. Rptr. 31, 34 (1967) (concluding California was "disinterested" in a dispute where its only connection was plaintiff's after-acquired residence).

**[16]** Moreover, the fact that most Appellants and, apparently, most Vietnamese expatriates living in the United States reside in California carries little weight in our substantial interest analysis. California is merely the current residence of certain Appellants and the place where, cognizant of the favorable statute of limitations, they happened to seek performance. The state had no connection with this case when Appellants made their deposits or when the banks ceased operations in Saigon.[8] Nor was there any reasonable expectation at the time the causes of action accrued that the banks would perform in California: the alleged contracts were executed in Vietnam with Chase and Citibank, both headquartered in New York. Even recognizing that the banks were ultimately liable for the debt of the closed branches, it is the New York-based parent bank of the Saigon branch—not another branch—that is responsible to Appellants. *Accord Vishipco Line v. Chase Manhattan Bank*, 660 F.2d 854, 863-65 (2d Cir. 1981).

**[17]** As Appellants offer no other basis supporting California's interest, we conclude that California does not have a substantial interest in this case.

## ii

Since maintenance of Appellants' claim serves no substantial interest of the forum state, we must determine whether

---

[8]Although California may have an interest in allowing its citizens to maintain legal claims, for the reasons discussed in Section III.B.i, this does not amount to a "substantial interest."

there is any jurisdiction with a more significant relationship to the parties. If Appellants' claims are time-barred there, then they are time-barred. Restatement (Second) of Conflicts of Law § 142(2). Here, two jurisdictions have a significant relationship to the Appellants and Citibank and Chase: Vietnam (where the action arose)[9] and New York (the location of the banks' headquarters).[10] As already discussed, with respect to Citibank and Chase, none of the parties has offered any evidence of Vietnamese law upon which we might rely. Therefore, we need not decide whether, when presented with more than one state with a significant relationship to the parties, federal common law requires us to elect the state with the *most* significant relationship. We focus, instead, on whether the laws of New York permit or bar the action.

[18] Under New York law, Appellants' claims are barred by the six year statute of limitations for contractual and fraud claims. N.Y. C.P.L.R. 213(2), (8). Although, New York's

---

[9]In *Trinh v. Citibank*, 850 F.2d 1164, 1167 n.2 (6th Cir. 1988), an earlier case arising out of the 1975 closure of foreign banks in Saigon, the Sixth Circuit noted that it considered Vietnam to be the forum with the most significant contacts with the case because "all of the indicators point[ed] to a conclusion that Vietnamese [substantive] law applie[d]. Plaintiff's citizenship was Vietnamese, and his father, [the bank], the banking relationship, the banking transactions, and the account currency were all located in Vietnam." We agree.

[10]*Edelmann*, which arose out of the closure of foreign bank branches in Cuba following Fidel Castro's ascendence to power, illustrates why the banks' headquarters are viable fora. *See Edelmann*, 861 F.2d at 1294-96. Faced with the choice of Puerto Rico (plaintiffs' residence), Cuba (where the action arose), and New York (the defendant bank's headquarters), the First Circuit applied New York law because, when a bank's branch conducts operations, the ultimate place of performance is the bank's main office, not the branch. *Id.* We are convinced by this analysis that New York has more significant contact with the parties than does California. *See* Restatement (Second) of Conflicts of Law § 188(2) (noting relevant contacts in a contract action are "(a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) domicile, residence, place of incorporation, and place of business of the parties").

general rule is that a cause of action accrues when a depositor makes a demand on the bank, N.Y. C.P.L.R. 206(a)(2), that rule also contemplates its inapplicability in situations where no demand is necessary. *See Bao v. Bank of Am.*, No. 84 Civ. 6013, 1986 WL 1807, at *2 (S.D.N.Y. Feb. 3, 1986) ("[T]he six-year statute begins to run at the moment when a demand is made by the depositor, unless no demand is necessary."). Indeed, it has long been established that futility of demand renders it unnecessary. And, the closure of a bank is recognized as an example of such futility. *Sokoloff v. Nat'l City Bank of N.Y.*, 164 N.E. 745, 749 (N.Y. 1924) ("The fact that the bank had gone out of business on that date made a demand useless and unnecessary . . . . [T]hat which becomes impossible and useless ceases to be required by the law in cases like this."). In such circumstances, the bank's closure constitutes repudiation of the contract and the cause of action accrues at that time. *Tillman v. Guar. Trust Co.*, 171 N.E. 61, 61-62 (N.Y. 1930) (per curiam) ("The period of limitation during which an action may be brought must be computed from the time of the accruing of the right to relief by action . . . . By failure to make a demand which is unnecessary, a depositor cannot prevent the period of limitation from running against a cause of action which he is entitled to maintain without demand.").

In three unrelated cases arising out of branch closures in Saigon, the Southern District of New York applied these rules, concluding that plaintiffs' causes of action accrued when the Saigon branch of the bank was closed. *Bao*, 1986 WL 1807, at *3-4; *Tat Ba v. Chase Manhattan Bank*, 616 F. Supp. 10, 12-14 (S.D.N.Y. 1984); *Tran v. Citibank*, 586 F. Supp. 203, 205-06 (S.D.N.Y. 1983). In each case, the action was barred by the six year statute of limitations. *Bao*, 1986 WL 1807, at *3-4; *Tat Ba*, 616 F. Supp. at 14-15; *Tran*, 586 F. Supp. at 205-206. We see no reason to part company with the Southern District of New York in the case before us today.

Thus, under New York law, Appellants' claims against Citibank and Chase are barred.[11]

## IV

Having concluded that Appellants' causes of action are barred against all of the defendants, we must consider Appellants' arguments that equitable tolling saves their claims. Though we review *de novo* the district court's determinations with respect to the statute of limitations, we review for abuse of discretion its conclusions regarding the applicability of equitable tolling. *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1175 (9th Cir. 2000).

Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue. *Supermail*, 68 F.3d at 1206. Nevertheless, we cannot say that the district court abused its discretion here. As a preliminary matter, we recall that, by its very nature, equitable tolling concerns itself with the *equities* of dismissal for untimely filing caused by factors independent of the plaintiff. Accordingly, we must ask whether it would be unfair or unjust to allow the statute of limitations to act as a bar to Appellants' claims. We conclude that it would not.

[19] We need not address the potential choice-of-law issue presented by this question. Whether we apply California, New York, or federal law, Appellants are not entitled to equitable tolling either on account of the banks' misrepresentations or due to extraordinary circumstances. As we have already

---

[11]We note that New York has a borrowing statute providing that an action arising outside of New York must be timely under both New York law and the law of the jurisdiction where the action accrued. N.Y. C.P.L.R. 202. Since Appellants' actions are barred by New York law, we need not consider Vietnamese law. *See Tat Ba*, 616 F. Supp. at 11 n.4.

explained, the banks "continually" denied liability to Appellants. Although Citibank, Chase and Chiao Tung offered inconsistent and contradictory support for those denials, it is clear that Appellants have had the information necessary to bring suit (i.e., that the banks refused to return their deposits) for many years. Therefore, the banks' misrepresentations cannot support equitable tolling. *See, e.g.*, *Santa Maria*, 202 F.3d at 1175, 1178 ("If a reasonable plaintiff would not have known of the existence of a possible claim . . . then equitable tolling will serve to extend the statute of limitations . . . until the plaintiff can gather what information he needs."); *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) ("Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant . . . ."); *Lantzy v. Centex Homes*, 73 P.3d 517, 532-33 (Cal. 2003) (discussing the doctrine of equitable estoppel); *Kotlyarsky v. New York Post*, 757 N.Y.S.2d 703, 707 (N.Y. Sup. Ct. 2003) (citing *Gleason v. Spota*, 599 N.Y.S.2d 297, 299 (N.Y. App. Div. 1993) (stating that equitable estoppel will not toll a statute of limitations if "plaintiff possesses 'timely knowledge' sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations") (citation omitted)).

**[20]** Nor have Appellants argued that any "extraordinary circumstances beyond [their] control made it impossible to file the claims on time." *Seattle Audubon Soc'y v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991) (noting that lack of access to courts caused by war supports equitable tolling); *see also Scholar v. Pac. Bell*, 963 F.2d 264, 267-68 (9th Cir. 1992) (holding that equitable tolling is applicable only in "extreme cases").

Had Appellants offered any indication that, until recently, they themselves were unaware of their claims, were held in reeducation camps, or were in refugee camps, we would gladly consider their equitable tolling argument. But as the

record stands, we have no indication that this occurred. At best, the complaint alleges that "Vietnam . . . did not resume relations with the United States until the late 1990s," years before Appellants initiated their lawsuit. Still, Appellants fail to explain why *after* coming to the United States they delayed in making their claim. When pressed at oral argument, counsel for Appellants could only guess that his clients had failed to bring their claims for "lack of English" or "lack of knowledge of the American system." While those difficulties are regrettable, they do not constitute cause for equitable tolling of the statute of limitations.

We do not doubt that the circumstances surrounding the regime change in Vietnam may have justified an extended tolling of the statute of limitations, but we see nothing to support the nearly thirty-year tolling Appellants seek here. Thus, the district court did not abuse its discretion.

## V

Finally, we ask whether exceptional circumstances render unreasonable this result. *See* Restatement (Second) of Conflicts of Law § 142 (instructing that the rule is to be followed "unless the exceptional circumstances of the case make such a result unreasonable"). To determine whether the result dictated by § 142 is unreasonable we are guided by the general choice-of-law principles set forth in the Restatement.

Under those provisions, we must consider the following factors to determine the applicable law:

  (a)  the needs of the interstate and international systems,

  (b)  the relevant policies of the forum,

  (c)  the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflicts of Law § 6.

**[21]** Unfortunately, the Restatement provides "scant instructions with respect to how and when its unreasonableness proviso should apply." *Cruz*, 387 F. Supp. 2d at 1079. We agree with the Northern District of California, however, that the test is triggered only when "exceptional circumstances" exist. *Id.* (internal quotation marks omitted). Though not defined in the Restatement, we are convinced that a wide range of factors may bear upon the analysis. At a minimum, though, exceptional circumstances must be "out of the ordinary course," "unusual," or "special." *See* Oxford English Dictionary (2d ed. 1989). Though quite infrequent, the closure of international banks in countries experiencing extreme political or financial instability and civil war is neither special nor out of the ordinary,[12] and it is hardly unusual for the statute of limitations to bar a cause of action that accrued nearly thirty years earlier. We can discern, and Appellants have offered, no other circumstance making this case exceptional. Thus, the result dictated by § 142 is reasonable.

---

[12]Notable examples include Russia in 1918, *e.g.*, *Sokoloff*, 164 N.E. at 745; Mexico in 1920, *e.g., Russek v. Angulo*, 236 S.W. 131 (Tex. Civ. App. 1921); Czechoslovakia in 1939, *e.g.*, *Werfel v. Zivnostenska Banka*, 23 N.Y.S.2d 1001 (App. Div. 1940); Cuba in 1959, *e.g.*, *Garcia*, 735 F.2d at 645; and Liberia in 1991, *e.g.*, *Bridgeway Corp. v. Citibank, N.A.*, 45 F.Supp. 2d 276 (S.D.N.Y. 1999).

## VI

Accepting Appellants' allegations as true, we regret that they will be deprived of the opportunity to recover funds solicited and, then, improperly concealed and withheld from them during a time of extreme crisis. The actions of Citibank, Chase, and Chiao Tung are questionable at best. Nevertheless, we must require litigants to abide by the procedural rules, including the statutes of limitations, established to promote fair and timely resolution of legal disputes. Applying the appropriate choice-of-law rules, Appellants' claims are time-barred, and they cannot be saved by equitable tolling.

**AFFIRMED**.